**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) EMILY ARRINGTON, an individual, ) | CASE NO.:   17-cv-529-CVE-JFJ |
| Plaintiff, ) | |
| v. ) | |
| (1) SOUTHERNCARLSON, INC., a foreign ) for profit business corporation, d/b/a Southern ) Fastening Systems, ) | |
| ) | ***ATTORNEY LIEN CLAIMED*** |
| Defendant. ) | ***JURY TRIAL DEMANDED*** |

## COMPLAINT

COMES NOW Emily Arrington, Plaintiff in the above-entitled action, by and through her attorneys, Charles L. Richardson and Alisa G. Hopkins, of the law firm, Richardson Richardson Boudreaux, and for her amended causes of action alleges as follows:

### JURISDICTION, VENUE, PARTIES

1.      Jurisdiction in this matter is based upon the existence of a federal question under 28 U.S.C. § 1331 (West 2012) and 28 U.S.C. § 1343(a)(4) (West 2012), pursuant to claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* (West 2012) and 42 U.S.C. § 1981 (West 2012).

2.      Venue is appropriate as all incidents alleged herein occurred within the Northern District of Oklahoma.

3.      Plaintiff Emily Arrington, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma and a resident of Tulsa County, Oklahoma.

4.      Defendant SouthernCarlson, Inc. ("SouthernCarlson"), d/b/a Southern Fastening Systems, at all times relevant to the claims alleged herein, upon information and belief, was and

is a foreign for profit business corporation operating in and under the laws of the State of Oklahoma, was and is an employer affecting commerce with fifteen (15) or more employees as defined under 42 U.S.C. § 2000e(f), and operates a distribution facility under the name "Southern Fastening Systems" in the City of Tulsa, Tulsa County, Oklahoma.

5.      Michael Hosley ("Hosley"), upon information and belief, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma, and was and is an employee of Defendant SouthernCarlson.

6.      Kurt Thompson ("Thompson"), upon information and belief, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma, and was and is an employee of Defendant SouthernCarlson.

7.      Seneca Utley ("Utley"), upon information and belief, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma, and was and is an employee of Defendant SouthernCarlson.

8.      Due to the foregoing, this Court has jurisdiction over the parties and subject matter.

## STATEMENT OF FACTS

9.      Plaintiff Emily Arrington incorporates paragraphs 1 through 8 herein as if fully set forth verbatim.

10.     Plaintiff was, at all times relevant to allegations contained herein, an employee of Defendant SouthernCarlson within the meaning of 42 U.S.C. § 2000e(f) working in the capacity of "Assistant Manager" for its distribution facility, Southern Fastening Systems, located at 12626 East 60th Street #110 in the City of Tulsa, and additionally, Plaintiff is and was a member of one or more legally recognized protected classes, i.e. Female; African American.

11.     Defendant SouthernCarlson, at all times relevant to the claims alleged herein, was and is an employer within the meaning of 42 U.S.C. § 2000e(b) (West 2012), which upon information

and belief, employs more than 500 employees.

12.     Kurt Thompson, at all times relevant to the claims alleged herein, was employed by Defendant SouthernCarlson in the capacity of "Regional Manager," a position that carried supervisory authority over Plaintiff in her position as "Assistant Manager."

13.     Michael Hosley, at all times relevant to the claims alleged herein, was employed by Defendant SouthernCarlson in the capacity of "Store Manager," a position that carried supervisory authority over Plaintiff in her position as "Assistant Manager."

14.     Seneca Utley, at all times relevant to the claims alleged herein, was employed by Defendant SouthernCarlson in the capacity of "Branch Manager," a position that carried supervisory authority over Plaintiff in her position as "Assistant Manager."

15.     Travis Fate ("Customer Fate"), at all times relevant to the claims alleged herein, was employed by Building Solutions and was responsible for buying supplies from Defendant SouthernCarlson for use by his employer.

16.     Building Solutions is one of, if not the largest and most profitable, customer frequenting Defendant SouthernCarlson's Tulsa location on a near daily basis.

17.     During the course of her employment, Plaintiff was the only female and one of two African Americans working at Defendant SouthernCarlson's Tulsa facility.

18.     On or about September 28, 2015 Plaintiff began enduring outrageous bouts of unwelcome, pervasive, derogatory, racially and sexually-based harassment from a customer and her co-workers at SouthernCarlson. The abuse progressively got worse until her sudden and unwarranted termination on February 9, 2017.

19.     Plaintiff was subject to unwanted and humiliating sexual and derogatory harassment by SouthernCarlson customer, Travis Fate, as well as her co-workers.  The customer would refuse

to call Plaintiff by her legal name, instead opting for humiliating slurs such as "Antoinette," a known derogatory name for Africa Americans, would ask her "why are you still employed," meaning she should not be working at SouthernCarlson because she was a black woman, as well as his offensive and humiliating slanging, constantly asking her "where's your brother at" referring to the only other African American in her workplace.

20.     Customer Fate frequently made unwanted and humiliating sexual comments to Plaintiff with the encouragement of her co-workers and supervisors throughout the entire course of her employment. Such as, "where's your daddy at (referencing her co-worker, Dave Roesch)," "did you suck your daddy's dick last night, "does your daddy have a big dick," "are you gonna wipe your daddy's ass," "did you get that piercing to lick your daddy's balls," "how much to see your tongue, $15, $20, I'll pay $25."

21.     When Plaintiff became noticeably upset by the harassment and humiliation, she would be taunted "aww are you going to walk away and cry?" As Customer Fate made these comments, Plaintiff's co-workers and supervisors, including Hosley, would join in on the abuse and escalate the hostility against Plaintiff. In fact, Hosley was seemingly the main instigator of Customer Fate's abuse, leading other SouthernCarlson employees to circle around Plaintiff, laugh, and chime in at every comment that was made knowing full well that it was causing her significant harm and humiliation.

22.     Plaintiff repeatedly complained to Hosley about the outrageous harassment, but he took no action and he did nothing to stop it. Plaintiff followed SouthernCarlson protocol by then reporting the harassment to Branch Manager Utley. Utley also failed to take any measures to stop or protect Plaintiff from the abuse she was enduring at SouthernCarlson.

23.     The harassment escalated to the point that Plaintiff was physically, mentally, and

emotionally damaged by the outrageous and humiliating harassment. Her superiors did nothing to stop the harassment, document its occurrences, prohibit her co-workers from participating in the abuse, or educate SouthernCarlson employees on appropriate workplace behavior.  Instead, Defendant SouthernCarlson, through its employees, continued to facilitate an abusive environment in order to avoid the risk of damaging the business relationship it had with its best customer, Building Solutions, by and through its supplies buyer, Travis Fate.

24.     On one occasion when Plaintiff attempted to speak up and stop an incident of harassment, she was immediately reprimanded by Hosley for how she spoke to SouthernCarlson's best customer.

25.     In order to protect its financial interests with Building Solutions, Hosley retaliated against Plaintiff for the threat she posed to the business relationship with her complaints by unjustly 'punishing' her during work hours.   In February 2017, Hosley began punishing Plaintiff by forcing her to sort and put away incoming inventory by herself when it was – and always had been – a labor intensive, multi-person task.   When Plaintiff would ask for help from other employees, Hosley would tell them to "go back inside," forcing Plaintiff to complete the strenuous labor alone, as other employees sat inside watching her work.

26.     In December 2016, Plaintiff applied internally for advancement in the company when a salesman position became available at SouthernCarlson's Tulsa location. Plaintiff was immediately denied the position by Thompson, who told her that "women never last out in the field" and that because she was a single mother she couldn't handle the work hours or job duties as well as a man. Thompson hired a male, who had comparable skill and experience to Plaintiff, and who was also a single parent, for the salesman position instead of Plaintiff.

27.     The harassment and discrimination caused such distress to Plaintiff that she began seeing

a therapist to deal with her emotional suffering that was affecting her both physically and mentally. Plaintiff actively searched for new employment at a different company at the advice of her therapist and because she could not take the hostile work environment she endured as an Assistant Manager at SouthernCarlson.

28.     Finally, after continuing to complain to multiple Branch Managers about the unwanted and hostile harassment, Plaintiff was informed on February 9th, 2017 that she was being terminated from her position as Assistant Manager because SouthernCarlson was 'going in a direction that didn't involve her.'

29.     The actions taken by the Defendant exhibits a pattern of behavior that SouthernCarlson engaged in, through its management personnel and employees, inconsistent with federal law under Title VII of the Civil Rights Act of 1964. Namely, hostile work environment, gender discrimination, and unlawful retaliation.

30.     Plaintiff timely filed her complaint with the EEOC, as evidenced by her "Charge of Discrimination," dated July 30, 2017, which fell within 180 days of the matters alleged in the preceding paragraphs of this Complaint.

31.     Plaintiff received confirmation of her Right to Sue from EEOC on August 29, 2017, meaning that this action is timely filed, that being within 90 days of the authorization.

### FIRST CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT

32.     Plaintiff Emily Arrington incorporates paragraphs 1 through 31 herein as if fully set forth verbatim.

33.     Plaintiff, while an employee at SouthernCarlson, was subjected to a hostile work environment by SouthernCarlson's management and employees, due to the pervasive, derogatory, and unwelcome comments and actions which were sexual in nature, creating a

workplace environment which a reasonable person would deem intolerable.

34.     Plaintiff, on numerous occasions, complained to managers Hosley, Thompson, and Utley, about the pervasive, derogatory, unwelcome, sexual comments and actions which were the source of discomfort and offense on the part of Plaintiff.

35.     Nonetheless, the managers refused to make any attempt to stop the harassment or cease SouthernCarlson staff from engaging in the conduct of which Plaintiff complained. In fact, management participated and encouraged staff to participate in said harassment.

36.     The conduct alleged in the preceding paragraphs was both severe and pervasive as to constitute a hostile and abusive work environment.

37.     Plaintiff did, in fact, believe her work environment to be hostile and abusive on the basis of the conduct alleged.

38.     As a result of the hostile and abusive work environment, Plaintiff was constructively terminated from her employment at SouthernCarlson due to her unwillingness to tolerate the offensive behavior.

39.     Further, due to the fact that the abusive and hostile acts alleged above were perpetrated by managers, co-workers, and a customer, and that such actions were reported to multiple managers, including Seneca Utley, as was directed in SouthernCarlson's employee manual, human resources/risk management and other management level employees of SouthernCarlson knew or should've have known of the abusive conduct in that it was sufficiently pervasive, open, and notorious that a reasonable employer would have to be aware of the intolerable conduct directed at Plaintiff.

40.     As a result of the actions constituting a hostile work environment and the failure of supervisory and management-level employees at SouthernCarlson to bring a cessation of such

actions, the rights of Plaintiff under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*, were violated, causing her injury.

**SECOND CAUSE OF ACTION**
**UNLAWFUL RETALIATION**

41.    Plaintiff Emily Arrington incorporates paragraphs 1 through 40 herein as if fully set forth verbatim.

42.    Plaintiff engaged in protected activity by complaining to management personnel for SouthernCarlson specifically managers Hosley, Thompson, and Utley, of the derogatory and sexually offensive statements and hostile actions in the workplace on the part of Customer Fate and other SouthernCarlson employees, on a near weekly basis ending on February 9, 2017.

43.    In response to her complaints, Plaintiff was subjected to retaliatory and materially adverse employment actions which would tend to dissuade a reasonable employee from making or supporting a charge of discrimination, which included the following:

    a.    Demeaning verbal reprimanding for complaining about the offensive comments and sexual harassment;

    b.    Demands that the Plaintiff perform hard labor –which consisted of labor-intensive tasks which were always performed as multi-person jobs – alone and denying her any assistance, even from other employees who were not busy at the time.

    c.    Aiding and participating in the harassment in order to facilitate an environment where Plaintiff would feel she had to endure the abuse as the normal course of business at SouthernCarlson.

    d.    Terminating the employment of Plaintiff on February 9, 2017 because her complaints branded her as a liability to corporate profits.

44.     As a result of the actions constituting retaliation against Plaintiff, the rights of Plaintiff under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), were violated, causing Plaintiff injury.

### THIRD CAUSE OF ACTION
### SEX DISCRIMINATION

45.     Plaintiff Emily Arrington incorporates paragraphs 1 through 44 herein as if fully set forth verbatim.

46.     Plaintiff is and was a member of one or more legally recognized protected classes, i.e. Female.

47.     Plaintiff, while an employee at SouthernCarlson, was subjected to a sex-based discrimination by Kurt Thompson while he acted in his official capacity as Branch Manager.

48.     During Plaintiff's employment as Assistant Manager, she received excellent reviews from customers and had an impeccable employment record with SouthernCarlson.

49.     In December 2016, Plaintiff applied internally for advancement in the company when a salesman position became available. Plaintiff was immediately denied the position without an interview or relevant inquiry by Branch Manager Thompson.

50.      Manager Thompson told Plaintiff he would not select her for the salesman position because "women never last out in the field" and that because she was a woman and a single mother she couldn't handle the work hours or job duties as well as a man.

51.     Thompson hired a male, who had comparable skill and experience to Plaintiff, and who was also a single parent, for the salesman position instead of Plaintiff.

52.     Plaintiff has adversely suffered from sex discrimination by and through Defendant SouthernCarlson when she was denied justified advancement in her desired career path with the company due to her gender and status as a single mother.

53.     As a result of the actions Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* were violated, causing her injury.

### FOURTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54.     Plaintiff Emily Arrington incorporates paragraphs 1 through 53 herein as if fully set forth verbatim.

55.     By maliciously participating in the pervasive, derogatory, unwelcome, and sexually-based harassment, and failing to cease the relentless source of discomfort and offense on the part of Plaintiff, as well as engaging in any other conduct alleged herein, SouthernCarlson – by and through its employees – has engaged in extreme and outrageous conduct.

56.     By maliciously participating in and/or failing to cease the pervasive, derogatory, unwelcome, sexually-based harassment, as well as any other conduct alleged herein, the Defendant intended to cause severe emotional distress to Plaintiff and/or recklessly disregard the near certainty that such distress would result.

57.     As a direct and proximate cause of Defendant's conduct, Plaintiff has and will continue to suffer humiliation, extreme emotional distress, anxiety, stress, depression, anguish, and loss of self-esteem.

58.     The Defendant's conduct was intentional, malicious, and done for the purpose of causing injury to Plaintiff.

59.     The Defendant's acts, omissions, conduct, and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein the Defendant intended to harm Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

60.     Defendant's conduct justifies an award of exemplary and punitive damages.

## VICARIOUS LIABILITY
## RESPONDEAT SUPERIOR

61.     Plaintiff Emily Arrington incorporates paragraphs 1 through 60 herein as if fully set forth verbatim.

62.     SouthernCarlson employees Michael Hosley, Kurt Thompson, Seneca Utley, and all other above-mentioned workers, acted at all relevant times within the scope of their employment with Defendant SouthernCarlson.

63.     Defendant SouthernCarlson is, therefore, jointly and severally liable for Plaintiff's injuries caused by SouthernCarlson's employees actions and omissions perpetrated within the scope of their respective employment with that entity.

## EXEMPLARY AND PUNITIVE DAMAGES

64.     Plaintiff Emily Arrington incorporates paragraphs 1 through 63 herein as if fully set forth verbatim.

65.     The acts and omissions by Defendant and, through its employees, as set forth in the preceding paragraphs in this Petition demonstrate that Defendant was engaged in conduct and/or practices evincing malice and/or reckless indifference to Plaintiff's rights.

66.     As a direct result of Defendant's malice and/or reckless disregard for Plaintiff's rights, Plaintiff is entitled to exemplary and punitive damages in the amount to be determined at trial with the financial resources available to Defendant and sufficient to deter others similarly situated from like behavior.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court enter judgment against Defendant in excess of $75,000.00 and consistent with and under the theories presented above for actual and punitive damages, for costs incurred by Plaintiff, including attorneys' fees, for pre-judgment and post-

judgment interest, and for such other relief to which Plaintiff is entitled at-law or in equity.

Respectfully,

/s/ Charles L. Richardson
Charles L. Richardson, OBA No. 13388
Alisa G. Hopkins, OBA No. 31592
Richardson Richardson Boudreaux
7447 S. Lewis Ave.
Tulsa, OK 74136
(918) 492-7674 Phone
*Attorneys for Plaintiff*